UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Civil Case Number: _____

NYKA O'CONNOR
(Write the full name of the plaintiff)

vs.

LAKE CI WARDEN ROYAL, SECRETARY FDOC JULIE JONES,

LAKE CI ASSISTANT WARDEN-MENTAL HEALTH PEPPIN,

DR. WILLIAM SAJOWSKI, DR ANTONY,

DR. B. EXCELLENT, DR. NOEL, NURSE [illegible] DEGIOVANI
(Write the full name of the defendant/s in this case)

Officially &/or Individually, Jointly & Severally

FILED by PG D.C.
JUN 06 2016
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. of FLA. – MIAMI

cat/div 550/1983/MIA
Case # _____
Judge _____ Mag WHITE
Motn Ifp YES Fee pd $ 0
Receipt # _____

**COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983**

I. Party Information

A. Plaintiff: NYKA O'CONNOR

   Address: 19225 US Highway 27 Clermont FL 34715-9025

   Inmate/Prison No.: 199579

   Year of Birth: 1980 (Do not include day or month, pursuant to Fed. R. Civ. P 5.2)

   (Write your name, address and prison/inmate number, if applicable)

vs.

B. Defendant: Royal (W/M)          Defendant: Julie Jones (W/F)

   Official Position: Warden Lake CI   Official Position: Secretary FDOC

   Place of Employment: Lake CI        Place of Employment: FDOC Central Office, 501 S. Calhoun
   19225 US Highway 27, Clermont FL 34715                     Street Tallahassee FL 32399
   (Write the full name of each defendant, official position and place of employment. Attach a
   separate page if you need additional space for additional defendants.)

1-14

I. Party Information

B. Defendant: Pippin (W/F)
Official Position: Asst. Warden Mental Health
Place of Employment: Lake CI,
19225 US Highway 27, Clermont FL 34715

Defendant: William Sadowski (W/M)
Official Position: Former Psychiatrist
Place of Employment: Lake CI - last known
19225 US Highway 27, Clermont FL 34715

Defendant: Antony (E. Indian-Asian Male)
Official Position: Former Psychiatrist
Place of Employment: Lake CI - last known
19225 US Highway 27, Clermont FL 34715

Defendant: B. Excellent (B/M - Haitian)
Official Position: Psychiatrist
Place of Employment: Lake CI
19225 US Highway 27, Clermont FL 34715

Defendant: Noel (B/M - Haitian)
Official Position: Medical Doctor
Place of Employment: Lake CI
19225 US Highway 27, Clermont FL 34715

Defendant: Degiovani (W/F)
Official Position: Former Nurse
Place of Employment: Lake CI - last known
19225 US Highway 27, Clermont FL 34715

## II. Statement of Claim

Briefly describe the facts of your case. Describe how each defendant is involved, names of other persons involved, and dates and places. Each claim should be stated in a separately numbered paragraph. Please use short and plain statements, with separately numbered paragraphs indicating why the relief requested should be granted. Do not include legal arguments or cite cases or statutes. Attach additional pages, if necessary.

See Attached - Accompanying papers.

## III. Relief Requested

Briefly state what you are requesting from the Court (what do you want the Court to do). Do not include legal arguments or cite cases or statutes. Attach additional pages, if necessary.

Adequate & TIMELY care provided ASAP, including timely inquiries, dentures, tests, Meds, Procedures, Surgeries, General Population Setting-accommodation; O'Connor not return to Sewanee if that can't adequately accommodate his Disabilities, Non-Standard Therapeutic Diet compliant with O'Connor's Health & Religion, Front cell pass, no heavy lifting pass, prescription glasses, Med shoes, ACE wrap/brace, ICEY HOT- muscle rub, chronic gastro clinic, implants, etc.. Damages (Punitive, Compensatory, Mental-Emotional, Nominal) where law allows same; Attorney Appointed; Preliminary & Permanent Injunction to provide adequate care & accommodations;

3-14

_Preliminary & Permanent Injunction & TRO to stop threatening & abusing Oconnor with Psych Meds. Any other relief. No Reprisals ensue._

### IV. Jury Demand

Are you demanding a jury trial?   ___ Yes   ✓ No

Signed this 26th day of May, 2016

_NYKA TASSIANT OCONNOR_
Signature of Plaintiff

I declare under penalty of perjury that the foregoing is truce and correct.

Executed on: 5-26-16

_NYKA TASSIANT OCONNOR_
Signature of Plaintiff

Facts: <u>Mental Health 2012</u>

1. Between May 23, 2012 and July 2012, O'Connor was housed at Lake CI (LCI) Mental Health Treatment Facility (MHTF), per Union Court Order to Baker Act 5-22-12.

2. About 5-23-12, O'Connor initially arrived at LCI and was assigned to Psychiatrist Dr Antony, who threatened to take O'Connor to Court to Involuntary Treat with forced injections.

3. O'Connor protested by advising Dr Antony that He was willing to take oral psych medications voluntarily, but Dr. Antony insisted on Involuntary Treatment via forced injections.

4. Weeks later, a second opinion was given by Psychiatrist William Sadowski, who concurred with Dr Antonys' decision for Court Ordered Involuntary Injected Psych Meds.

5. O'Connor also protested by advising Dr Sadowski that He was willing to take oral Psych Meds, but Sadowski insisted on Involuntary Treatment via Injected Psych Meds.

6. O'Connor feared being abused by Court Ordered Involuntary Psych Meds Injections, & had to devise a plan to hinder Psychiatrists Antony & Sadowski from abusing Him.

7. Antony & Sadowski intended to Involuntarily give O'Connor Psych Meds known to adversely affect Him, causing locking limbs, headaches, dizziness, pain, etc..

8. Psych Meds known to adversely affect O'Connor which O'Connor relayed to Antony & Sadowski include but not limited to Haldol, Thursene, Prolixin & others in similar class.

9. Consequently, O'Connor came up with the idea to tell Dr Antony et al, that nothing is wrong with Him as alleged, & that LCI Mental Doctors misdiagnosed Him, etc..

10. Dr Antony et al believed O'Connor and cancelled His Involuntary Treatment Petition.

11. Dr Antony consequently prescribed O'Connor only Prozac for Depression, which O'Connor voluntarily took orally, instead of the above Psych Meds with adverse effects.

12. O'Connor then went on a Hunger Strike for about 2 weeks, and Dr Antony resumed His threats to take O'Connor to Court for involuntary injection of adverse Psych Meds.

13. O'Connor refused to eat His meals at the time due to meals serving meat, fish & eggs; contrary to O'Connors' sincere religious beliefs of Vegetarian Judaism & SKIA Philosophy.

14. O'Connor went to outside hospital twice during His lengthy Hunger Strike, and upon His return to LCI, Nurse Degiovani tried enticing O'Connor to eat, offering a tray, sandwich & Ensure.

15. O'Connor rejected Nurse Degiovanis' enticement, who consequently falsely alleged O'Connor was a threat and needed an ETO Injection of Psych Meds Haldol.

16. Degiovani contacted Dr Antony telephonically, who went off Degiovanis' fraudulent allegations and authorized an Involuntary Injection of Haldol that adversely affected Him.

17. At the time Dr Antony didn't assess O'Connor face to face in person to make His own diagnosis, and Nurse Degiovani was not a licensed Psychiatrist to make a Mental Assessment of O'Connor.

5-14

Facts: <u>Mental Health 2012</u>

18. While still on Hunger Strike, O'connor was given an involuntary ETO injection of Psych Meds, absent any penological justifications; though O'connor was not a threat whatsoever.

19. Said injected psych meds caused O'connor to be light headed, dizzy, disoriented, & have locking limbs that caused pre-existing gunshot wound & broken ankle to pain.

20. O'connor had a serious Health need to receive adequate care for his depression & other diagnosis, & not be subjected to involuntary injection of known adverse Psych Meds.

21. O'connor had a serious health need to consent to medications for his depression & other diagnosis, instead of being repetitiously threatened with court ordered involuntary injections.

22. O'connor had a serious health need to be assessed by a licensed Psychiatrist face to face, in person, & not by a Nurse for any alleged Mental Issues before receiving ETO injection.

23. Antony was deliberately indifferent to O'connors' serious health needs by not providing him adequate non-adverse oral psych meds via timely consent without threats to force treat

24. Antony was deliberately indifferent to O'connors' serious health needs by threatening him with known adverse Psych Meds Force Treatment & denying his consent to adequate & timely meds orally.

25. Antony was deliberately indifferent by not assessing O'connor in person and instead, relying on the assessment of Nurse Degiovani to prescribe O'connor ETO injection He recieved.

26. Sadowski was deliberately indifferent, via his second opinion to concur & condone Antonys' intentions to involuntarily treat him with adverse Meds & denying O'connors' consent to adequate oral meds.

27. Sadowski was deliberately indifferent by not providing O'connor adequate non-adverse Psych Meds voluntarily via timely consent, without threats of Court ordered Involuntary Treatment.

28. Antonys' & Sadowskis' Deliberate Indifference caused O'connor to suffer from worse stress, depression, anxiety, fear of being abused with adverse psych meds, & paranoia.

29. Antony & Sadowski caused O'connor to distrust Doctors by not revealing O'connors' other mental issues for care, due to fear of abuse with force meds that are adverse.

30. Degiovanis', & Antonys' Deliberate Indifference caused O'connor to also suffer from fear, paranoia and distrust for health care staff, with the effects of the ETO in facts line 19 above.

31. The fear, anxiety, depression, stress, distrust, paranoia, headaches, etc., already existed from prior 1-27-12 physical injury, and Antony, Sadowski & Degiovani contributed to same.

32. The fear, anxiety, depression, stress, distrust, paranoia, headaches, etc., O'connor suffers from is preceded by said physical injury of O'connors' head laceration leaving a 3"&4" scar from 1-27-12 staff abuse.

33. Anthony, Sadowski & Degiovani had knowledge of the serious harm committed to O'connor, but intentionally disregarded that risk, which was more than gross negligence.

Facts: **Medical - Gastro 2012**

34. During O'Connors' stay at LCI MHTF 2012, during the above time period, O'Connor had & still has serious gastro issues that require adequate care e.g. regurgitation, indigestion, acid reflux, etc.
35. O'Connor now has gallstones for which He awaits surgery & alleged appendix issues that kills.
36. In 2012, the Alternate Diet served no fish or meat; but served eggs.
37. Dr. Blake prescribed O'Connor a Low Residue Diet for His gastro issues; which serves meat fish & eggs; where, meat causes acid reflux, heartburns & other gastro issues.
38. O'Connor then requested a Low Residue Alternate that serves no meat, to try to comply with His sincere religious beliefs to refrain from meat, fish eggs; & health needs.
39. FDOC Secretary, LCI Asst. Warden & LCI Warden at the time & to date provided no Low Residue Vegetarian Diet, and the Low Residue Alternate then, served eggs contrary to O'Connors' beliefs.
40. O'Connors' sincere Vegetarian Jewish & SYDA beliefs, require O'Connor to refrain from meat, fish, eggs; but allows cereal, bread, peanut butter, fruits, vegetables, etc.
41. SYDA Philosophy says meat, fish and eggs clog the nerve channels and hinder the flow of the Divine Kundalini Energy from permeating the body.
42. Due to O'Connors' Hunger Strike & weight loss, Dr. Blake prescribed O'Connor a 4000 Calorie Diet; so O'Connor requested a 4000 Alternate that served eggs, no meat or fish then.
43. FDOC Secretary, LCI Asst. Warden & LCI Warden at the time & to date served no Low Residue 4000 Vegetarian Diet; so O'Connor had to choose between Low Res. Alt., 4000 Alt or Vegetarian.
44. Dr. Blake also ordered gastro procedures (endoscopy, etc.) at Lake Outside hospital that had to be rescheduled due to the scheduled hearing for involuntary treatment scheduled said day.
45. O'Connor had to choose between said gastro procedures & Court Hearing for Involuntary care.
46. O'Connor chose the latter over the former; where, said hearing was subsequently cancelled; & the gastro procedure that was supposed to be rescheduled was never done, even to date.
47. O'Connors' ongoing gastro issues & injuries worsen with time; where His acid reflux, heartburns, indigestion, regurgitation, pains, etc., are proceeded by His 2010 gastro surgery leaving a 3"-4" scar.
48. O'Connor was & is a qualified individual with gastro disabilities, & is hindered from major life activities and functions, e.g., digesting, eating, sleeping, exercising, bending, due to acid reflux, etc.
49. Said hindrance is due to O'Connors' gastro Disabilities that FDOC refuses to accommodate, via providing adequate gastro care e.g., meds, procedures, surgery, chronic gastro clinic, etc.
50. Additional accommodations include providing Non-standard Therapeutic Diet for O'Connors' Health & Religion combined.

Facts:- Mental Health 2016

51. On 3-31-16, O'Connor was returned to LCI MHTF pursuant to Suwannee Court Judge Involuntary Commitment Hearing, Baker Acting O'Connor as incompetent on ~~[redacted]~~ 3-29-16.

52. Reasons be, O'Connor was on Hunger Strike, Depressed, had Nightmares, from Suwannee abuses, etc; which continue to date.

53. On 4-1-15, Psychiatrist Dr Medlin advised O'Connor that He would be taken to Court for Involuntary Treatment via Forced Injection & He wouldn't voluntary consent to oral meds after the hearing.

54. On 4-5-15, Psychiatrist Dr Excellent advised O'Connor that He would allow O'Connor to take Psych Meds orally voluntarily even after obtaining Court order for Involuntary Treatment.

55. On 5-3-16, Dr. Excellent, Psych Counselor Ibara & Psych Counselor Noel, advised O'Connor they would recommend that O'Connor not be returned to Suwannee due to abuses O'Connor suffered there.

56. On 5-3-16, Dr Excellent threatened to take O'Connor to Court for Involuntary Treatment via forced injection without voluntary oral meds after receiving said Court Order.

57. O'Connor consented under threat, duress and coercion to take Psych Meds Zoloft orally, for Depression, & Risperdol that adversely affects male harmones for alleged paranoia.

58. On 5-20-16, Dr. Excellent discontinued the Risperdol, based on some Nurses' false allegation that O'Connor refused to take same orally 3 times, which He never refused.

59. On 5-24-16, Dr Excellent threatened to take O'Connor to Court for Involuntary Treatment forced injection, if O'Connor doesn't resume taking Risperdol & take Prazosin for nightmares.

60. Specifically, said nightmares come from Suwannee CI staff abuses to Him, causing also Post Traumatic Stress Disorder (PTSD).

61. O'Connor signed a consent under threat, duress and coercion to take Psych Meds Prazosin orally; & agreed verbally to resume taking Risperdol orally voluntarily.

62. O'Connor advised Dr. Excellent that He's scared of the needle, because O'Connor can't see what's inside it prior to injection of forced Psych Meds.

63. O'Connor advised Dr. Excellent that He knows of people who died & got paralized from overdose & incorrect meds injected in them & Dr. Excellent laughed.

64. O'Connor explained to Dr. Excellent that while on Hunger Strike 5-13-16 to 5-19-16, before liquid supplements were prescribed, He had to take Psych Meds on empty stomach.

65. O'Connor advised Dr Excellent said meds caused nausea, indigestion, heartburns, etc...

66. O'Connor has not ate solid food since 5-13-16 to date, due to hunger strike, religious fasting & protesting against the oppression He's subjected to in MHTF.

67. Dr Excellent placed O'Connor on SHOS (self Harm Observation Status) - suicide watch, on 5-15-16 after O'Connor not eating 9 consecutive meals, though O'Connor was NOT suicidal.

Facts: <u>Mental Health 2016</u>

68. where, not eating 9 consecutive meals is considered suicidal; thus, O'Connor had to drink liquid supplements starting 5-19-16 dinner, to get off SHOS to obtain some personal property.

69. On SHOS, no personal property is allowed, only suicide: shroud, blanket & mattress.

70. O'Connor advised Dr. Excellent that He has to take Psych Meds on empty stomach or refuse said Psych Meds & be subjected to Dr. Excellents' Court Ordered forced injections.

71. Dr. Excellent agreed with O'Connor & stated O'Connor should take Psych Meds when the liquid supplement is provided; considering liquid supplements order expires 5-25-16 & won't be renewed.

72. Again, O'Connor has to take liquid supplements on empty stomach, or refuse meds & be Court ordered forced injections, or break His religious fast & eat.

73. O'Connor has a serious health need to be provided adequate mental care for His diagnosis, without any threats of Court ordered Involuntary Treatment via forced injection.

74. O'Connor has a serious health need to be offered voluntary oral meds after court order, before Involuntary Forced Meds are given.

75. O'Connor has a serious health need to be free to choose between religious fasting without meds over psych meds on empty stomach, with threats to Involuntarily inject Him.

76. Dr. Excellent is being deliberately indifferent by threatening to Court Order Involuntarily Treat O'Connor with Forced Injections, without offering oral meds after obtaining Court Order.

77. Dr. Excellent is being deliberately indifferent by subjecting O'Connor to take Psych Meds on empty stomach or refuse meds & recieve forced injections or break fast & eat.

78. Dr. Excellents' Deliberate Indifference caused & contributed to O'Connors' existing fear, anxiety, depression, stress, distrust, paranoia, headaches that arose from physical injury 1-27-12, etc...

79. Specifically, the 1-27-12 laceration left a 3" 4" scar on His headback & the Suwannee CI laceration that left O'Connor with a 1½" scar over the left eyebrow.

80. On 5-24-16, O'Connor advised Dr. Excellent that there are a lot of ONGOING Mental Issues He would like to share with Him, but fears doing so.

81. Where, if O'Connor discloses same, Dr. Excellent will prescribe some adverse Psych Meds & will threaten to Court order force inject Him as above, if not taken orally.

82. Dr. Excellent had & has knowledge of the risk of serious harm to O'Connor that's ongoing, but has & is intentionally disregarding the risk, which is more than gross negligence.

9-14

Facts: Medical 2016

83. On about 5-11-16, O'Connor saw Dr. Noel, who did an initial assessment of O'Connor.
84. During said assessment, O'Connor advised Dr. Noel of several issues He's been experiencing over the years, to no avail.
85. Said issues include:- O'Connors' head, eyes, gastro, shoulders, leg, knee, ankle & toe issues.
86. Dr. Noel prescribed Zantax and Tums for O'Connors' gastro issues, over O'Connors' objection advising Dr. Noel that Zantax does no good for His gastro issues.
87. O'Connors' gastro issues include acid reflux that causes esophagus cancer, regurgitation, heart burns, indigestion, bloody stools, gallstones, appendix; etc..
88. O'Connor advised that that the Tums don't hold the food down, but only neutralizes the acid & food that comes up; temporarily preventing esophagus burning.
89. O'Connor inquired about Nexium for His gastro issues, to no avail; where, Dr. Noel advised that FDOC doesn't provide Inmates Nexium due to cost.
90. O'Connor advised Dr. Noel of His shoulder condition, where pain, tingly sensation, & numbing feeling extends from His shoulders to His hands, neck & face.
91. Dr. Noel Simply advised O'Connor to stretch and work His shoulder, because He's too young to have arthritis.
92. O'Connor agreed with Dr. Noel that He doesn't have arthritis, but has CRPS (Complex Regional Pain Syndrome) in His shoulder for years & needs reconstructive nerve surgery.
93. O'Connor advised Dr. Noel that adequate inquiries, such as MRI needs to be done on His shoulders to adequately pin-point the problem, because x-Rays are inadequate.
94. X-Rays only show deformities in bones, etc..
95. Dr. Noel remained silent and said nothing more about the shoulder problem.
96. Dr. Noel intentionally disregarded O'Connors' complaints about His blurry vision with sparkles, eye pain & watering eyes from strain; disregarded His headaches & dizziness.
97. Dr. Noel disregarded O'Connors' pain and peeling skin from gunshot scar on leg, Knee pain CRPS, paining improperly healed broken ankle & nail-less toe from surgery.
98. O'Connors' toe pains & numbs when bumped into & rubs against hard surfaces.
99. O'Connors' issues concerning His eyes, shoulder, gastro, leg, knee, ankle & toe; that He's been experiencing for years, constitute serious medical needs.
100. Noel was & is being deliberately indifferent by not recommending adequate inquiries for His head, shoulder, gastro, knee, ankle; & not referring O'Connor to specialists.
101. Dr. Noel was & is being deliberately indifferent by not providing O'Connor adequate care, e.g., icey-hot, muscle rub, etc, for shoulders, knee & ankle.

Facts: <u>Medical 2016</u>

102. Noel is deliberately indifferent in not providing ACE wrap &/or brace for knee and ankle support.

103. Dr Noel is deliberately indifferent by not providing O'Connor adequate meds for His shoulder pain, headaches, gastro issues, e.g., to help hold down food, etc..

104. Dr Noel was & is being deliberately indifferent by not providing O'Connor adequate medical shoes with ankle support & toe padding.

105. Dr Noel's delay & denial in providing adequate care has made O'Connor's condition worse.

106. Dr Noel's deliberate indifference caused & contributed to O'Connor's existent severe pain, anguish, emotional distress, headaches, numbing & tingly feeling.

107. Dr Noel's deliberate indifference caused & contributed to O'Connor's acid reflux, indigestion, heartburn, regurgitation, straining watery eyes with vision of sparkles.

108. Said mental & emotional injuries are preceeded by physical injuries e.g., lacerations leaving 3"-4" scar on headback, & 1½" scar over eyebrow, 3-4" gastro surgical scar.

109. Preceeding physical injuries for Mental-Emotional Injuries include :— bullet wound with bullet fragments in leg; broken improperly healed ankle, nail-less toe from surgery, etc..

110. Dr Noel had & has knowledge of the risk of serious harm that ensues, that's ongoing, but has & is intentionally disregarding the risk that's more than gross negligence.

Facts :— <u>Disabilities</u>

111. O'Connor is a qualified individual with Mental Disabilities, Visual-Optical Disabilities, Shoulder Disabilities, Gastro-Disabilities, Knee-leg-ankle-& toe Disabilities, & Dental Disability.

112. Said Disabilities substantially limits major life activities & functions, as below:—

113. Mental Disabilities impairs concentration, thinking & has caused O'Connor to be placed on (& continues; denied Gen-Pop activities, program & services) CM for conduct arising from His mental Unstableness; & suspends His Inpatient cm status, per 33-404.108.

114. Visual-Optical Disabilities hinder proper seeing, visual, reading, writing, etc...

115. Gastro Disabilities prohibit adequate digestion, eating, sleeping, due to acid reflux, when head is horizontal with stomach or head goes below the stomach, that burns & pains.

116. Shoulder Disabilities hinder proper exercising, sleeping on the sides due to pain, heavy lifting, & has limited range of motion in shoulders.

117. Shoulders prohibit outside cell activities that require rear restraint that places pressure on shoulders, causing pain, tingly sensation & numbness.

118. Knee Disabilities prohibit exercises use knees, prohibit bending especially due to knee pain, which prohibit spiritual meditation lotus posture, prohibit long standing & running due to pain.

11-14

Facts - <u>Disabilities</u>

119. Ankle prohibits walking or standing for for a period, or if running whatsoever, O'Connor has to stop due to pain.

120. Toe hinders walking & other activities when toe rubs & bumps against hard surfaces, ~~which~~ causes pain, which cause Him to stop walking or doing other activity.

121. O'Connor may never play soccer again due to no nail to protect toe from pain when He kicks the ball.

122. O'Connor is prohibited from participating in the herein major life activities & functions due to said Disabilities with His head, eye, shoulder, gastro, knee, leg, ankle & toe.

123. Secretary FDOC, LCI warden & Asst. Warden, can but haven't accommodated O'Connor with adequate care, e.g., adequate General Population setting, inquiries, surgeries, etc..

124. Additional Accommodations include: adequate meds, <u>dentures & implants</u>, icey-hot muscle rub, ACE-wrap &/or brace, shoes with ankle support & padded toe, ~~and~~ adequate diet, eye glasses, specialist referral, etc.

125. Said accommodations will costs little to nothing & any costs doesn't outweigh O'Connor's interests to recieve adequate care & accommodations.

126. O'Connor has & continues to suffer ONGOING injuries aforesaid from said ONGOING denial of care & accommodations for said disabilities, as stated elsewhere herein.

126B. Dental Disabilities of missing teeth hinders adequate & proper speech, eating, digestion, chewing, etc.

Facts: <u>Contracts</u>

127. All FDOC staff and contracted personnels have a contractual duty superimposed by Law to provide O'Connor adequate CARE, custody, control & confinement.

128. The Uniform Warrant of Committment by the sentencing Court requires all FDOC staff to keep O'Connor "safely" during His incarceration.

129. Doctors agreed to provide adequate care via their Hippocratic Oaths, license with FDOH & Corizon Contract.

130. Nurses agreed to ~~nothing~~ provide adequate care via their license with FDOH & Corizon Contract.

131. All Defendants signed necessary papers upon employment, agreeing to provide adequate care.

132. All Defendants accepted said offered contracts, agreements, oaths, license, etc., to provide adequate care, & recieved pay as consideration to perform said ministerial duties.

133. All Defendants breached their contracts, agreements, oaths, licenses, promises, etc, by denying O'Connor adequate Care & Accommodations aforesaid.

134. Said denial of adequate care resulted in the injuries aforesaid that are ONGOING.

Facts: <u>Imminent Danger</u>

135. O'Connors' is in Imminent Danger of dying due to the alleged appendicitis, which is known to rupture and cause death.

136. O'Connors' gallstone issues are considered medical emergencies.

137. Rupture of the veins in His esophagus is known to cause a massive and often fatal blood loss.

138. O'Connors' severe pain, difficulty walking, denial of adequate diet, amounts to Imminent Danger. So, is adverse Psych Meds O'Connor's subjected to.

139. O'Connor remains with severe pain, anguish, distress, bloody stools, gastro & anal cramps, acid reflux, heartburns, etc., that enhances the above.

Facts: <u>Joinder of Claims & Parties</u>

140. All matters herein are ongoing, arose from the same transaction, occurrence, and series of transactions and occurrences, with issue of Law & fact common to all.

Facts: <u>Notice</u>

141. The Court should take notice that O'Connor can't provide [Defendants full names &] exact dates due to staff denying and losing His Personal Property encompassing same.

142. All available grievance procedures have been exhausted.

143. All statements herein are to O'Connors' best recollection, while incompetent in MHTF per 3-29-16 Baker Act Hearing; and on Psych Meds that impairs His thinking & memory.

144. Appointment of Counsel is necessary to assist O'Connor litigate this case, while incompetent, on Psych Meds, etc., in the interest of Justice.

Violations:- <u>Torts & Contract Breach</u>

1. All Statement of Facts are incorporated herein by reference.
2. All Defendants are sued under the totality of circumstances criteria.
3. All Defendants are sued in Tort or Contract and NOT BOTH simultaneously for same wrong.
4. Antonys' deliberate indifference to O'Connors' serious health needs constitute Cruel & Unusual Punishment & Due Process Violations under US Const. Amend 8 & 14; & Fla Const.
5. Antony denying O'Connor adequate care constitutes Breach of Contract under Federal Common Laws of Contract & Fla Contract Laws
6. Sadowskis' deliberate indifference to O'Connors' serious health needs constitute Cruel & Unusual Punishment & Due Process Violations under US Const. Amend 8 & 14, & Fla Const.
7. Sadowski denying O'Connor adequate care constitutes Breach of Contract under Federal Common Laws of Contract & Fla. Contract Laws.
8. DeGiovanis' deliberate indifference to O'Connors' serious health needs constitute Cruel & Unusual Punishment & Due Process Violations under US Const Amend 8 & 14; & Fla Const.
9. Degiovanis denying O'Connor adequate care constitutes Breach of Contract under Federal Common Laws of Contract & Fla Contract Laws.
10. Secretary FDOC, LCI Warden & LCI Asst. Warden, discriminating against O'Connors' Disabilities and failing to accommodate, violates ADA & RA.
11. Secretary FDOC, LCI Warden & LCI Asst. Warden, discriminating against O'Connors' Disabilities and failing to accommodate, constitutes Breach of Contract under Fed. Com. Laws & Fl. Laws.
12. Secretary FDOC, LCI Warden & LCI Asst Warden denying adequate non-standard therapeutic Diet for His Health & Religion, violates Right to Religion under US Const Amend 1, RLUIPA, & Fla Const.
13. Secretary FDOC, LCI Warden & LCI Asst. Warden denying adequate non-standard therapeutic Diet for His Health & Religion constitute Breach of Contract under Fed. Com. Laws & Fla Laws
14. Excellents' deliberate indifference to O'Connors' serious health needs constitute Cruel & Unusual Punishment & Due Process Violations under US Const. Amend 8 & 14, & Fla Const.
15. Excellent denying O'Connor adequate care constitutes Breach of Contract under Federal Common Laws of Contract & Fla Contract Laws.
16. Noels' deliberate indifference to O'Connors' serious health needs constitute Cruel & Unusual Punishment & Due Process Violations under US Const Amend. 8 & 14; & Fla Const.
17. Noel denying O'Connor adequate care constitutes Breach of Contract under Federal Common Laws of Contract & Fla Laws..

# INSTRUCTIONS FOR FILING A
# COMPLAINT UNDER THE CIVIL RIGHTS ACT
# 42 U.S.C., SECTION 1983

This packet includes two forms:
(1) Complaint Under The Civil Rights Act, 42 U.S.C.§ 1983
(2) Application to Proceed Without Prepayment of Fees or Costs

To start an action under the you must file:
- an original, signed complaint,
- one copy of the complaint for *each* defendant named in the complaint. For example, if you name two defendants, you file the original complaint plus two copies. You should also keep a copy for your records. All copies of the complaint must be identical to the original, signed complaint.
- filing fee of $400.00 or an Application to Proceed Without Prepayment of Fees/Costs

Return the above forms and/or filing fee to the following address:

> Clerk's Office
> United States District Court
> Southern District of Florida
> 400 North Miami Avenue, 8N09
> Miami, FL 33128-7716

Your complaint must be legibly typewritten or clearly handwritten using a pen (do not use a pencil to complete these forms). As the plaintiff, you must sign and swear to the accuracy of the information in the complaint. If you need more space than is provided on the form, attach an additional blank page to the complaint.

Your complaint can be brought in this Court only if one or more of the named defendants is located within the Southern District of Florida. Also, you must file a separate complaint for each claim you have unless the claims are related to the same incident or issue.

In your complaint, you must provide the facts; you should not include legal arguments or citations.

**LEGAL MAIL**

INSPECTED BY: _Perrotta   5/24/16_  N.T.O.
OFFICERS SIGNATURE AND DATE

Nyka Oconnor 179579
Lake Correctional Institution
19225 Us Highway 27
Clermont Florida 34715

Clerk of Court
US District Court
Southern District Fla
400 N. Miami Ave,
Miami Florida 33128

MAILED FROM
LAKE CORRECTIONAL
INSTITUTION
STATE FACILITY



LEGAL MAIL

INSPECTED BY: _Perutto_  _5/26/16_  N.T.O
OFFICERS SIGNATURE AND DATE